———————o————————

No. 3513.

(Court of Appeal, Parish of Orleans.)

MRS. LILLIE TOLSON, Wife of J. H. Jack, vs. EDWARD THOMPSON, Appellant, and JOHN J. WARD.

Appeal from Civil District Court, Division "B."

R. J. Maloney, for Plaintiff and Appellee.

Richard and Vidrine, and Stafford and Lambert, for Defendant and Appellant.

1. The disregard of the terms of any injunction staying execution and

admitted by plaintiff in injunction to have been obtained through fraud on the Court cannot be viewed as an additional ground in another suit for damages justifying one of the grounds thereof.

2    Although terminating a law suit (and in this case one for damages) a compromise entered into between the litigants without consulting their attorneys and to their detriment has been condemned by the Supreme Court; yet, such a compromise has never been set aside, unless shown to have been through collusion or undue influence.

3.    An attorney disregarding such a compromise and suing for damages including solely his alleged attorney's fees has no lien and privilege on the cause of action, but only in the Judgment obtained and not obtainable in the face of the compromise of which he was aware, not shown due to collusion or undue influence and which settled the differences of the parties.

4.    For fees due for past and actual services the attorney's recourse was against those who had retained his services. 36 So. Rep. No. 17, page 826; 35 A. 337; 24 A. 571.

BEAUREGARD, J.  A very careful study of the record warrants the statement of the case made by appellant's counsel in their brief and its reproduction. It is as follows:

Edward Thompson sued a certain Mrs. A. Bruno for the sum of $30 in the First City Court of this City (Edward Thompson vs Mrs. A. Bruno, No. 5266, First City Court, made part of this record), and obtained a judgment for the full amount of his demand. He then issued a fi fa, but in this was met by an affidavit sworn to by Mrs. Lillie Tolson, wife of J. H. Jack, who claimed the property seized as her own. Thompson, nevertheless, persisted in his seizure and furnished the Constable with a forthcoming bond. An injunction was then gotten out in opposition to this, and, after trial, was maintained, as well as on appeal reserving to Mrs. Tolson, in addition, the right to sue for damages. This present suit is an attempt to exercise that right. Thompson, on the other hand, waited for some time,

40

under the prohibition issued by the Court, and during the interval leased the premises occupied by Mrs. Bruno to Mrs. Tolson. Mrs. Tolson and Mrs. Bruno lived together then for a period covering several months, but at the expiration of that time, Thompson, finding that Mrs. Tolson owed him rent, provisionally seized her furniture. At this juncture it may be well to mention that Mrs. Tolson and Mrs. Bruno had not been particularly happy in their domestic relations. In fact, about the same time as Thompson seized the furniture, they had been engaged in a very serious quarrel, and Mrs. Bruno had actually put Mrs. Tolson out of the house. Whether from a spirit of revenge or dissatisfaction, or not, she came to Mr. Thompson and informed him that the furniture she had restrained him from seizing under his original judgment against Mrs. Bruno was not her own, and that if he desired to realize upon it he had better issue a simultaneous execution for it, with the second one for rent. He did so, and it developed that Fitzpatrick and Brennan, the auctioneers, after the sale, paid him a sum in the neighborhood of $200. as representing principal, costs and interest on both judgments. Then came this present suit for damages, but before it was brought to trial Mrs. Tolson compromised with Mr. Thompson for $37.30. At the same time she stated that its institution was without her authority and consent and directly against her will. In proof thereof, she gave to appellant a letter asking for its discontinuance, which he was to forward to her attorney, Mr. Maloney, and another addressed to himself, wherein she stated that she desired the litigation terminated. It was on this occasion also that she said that the injunction she had obtained was a fraud, and advised Mr. Thompson to execute upon his judgment. Mr. Maloney, however, did not consider the wishes of his client in the matter, although they were most emphatically expressed, but persisted in the suit and brought it to a trial, resulting, in May, 1904, in a judgment in plaintiff's favor for $150—the total

41

amount of the attorney's fees claimed as part of the damages sustained by plaintiff, in execution of the judgment, thereafter, virtually admitted to have been fraudulently stayed.

So, if so informed, and the judgment creditor disregarded the imperative terms of the injunction issued by subsequent execution, under the prior judgment enjoined, which disregard could only have been brought to the notice of the court enjoining by a rule for comtempt, the judgment creditor's proceedings can hardly militate against him and be considered as an additional ground to the judgment for damages herein against him. In other words, his violation of the terms of an injunction founded on fraud did not amount to a contempt of the court deceived in issuing the injunction and reserving plaintiff's right, in injunction, to sue for damages. The machinery of courts cannot be used to deceive them, and once deceived urge their adherence to the majesty of decrees founded on deceit. Hence the disregard of the binding force of the injunction by the defendant herein is not considered of moment, and is immaterial.

On the trial of this case the compromise agreement was offered in evidence and objected to, but admitted as going to the effect, although counsel for plaintiff sought to limit the effect to that part of the compromise not affecting his fees; and which the final judgment did virtually, do.

Much stress was then laid on the fact as to whether the agreement had been entered into prior to, or after the filing of the suit for damages; because, if after (as it was done) its service on the Defendant was a bar to the compromise.

This Court is not aware that because in a suit for damages, attorneys fees are claimed as a part thereof, the attorney claiming them has acquired any vested rights. The Code, R. C. C. 3071, holds that the compromise is an agreement entered into for putting an end to a lawsuit; the one before this Court recites that it is made on plaintiffs receipt of $37.30 to cover "all damages of

whatsoever nature and costs as claimed by us (them) in (the present) suit No. 68178 of the Docket of the Civil District Court."

So, whether this compromise was brought to the knowledge of counsel for plaintiffs after institution of the suit (which was filed July 12, 1902, and served on the same day; whilst the compromise was later, August 28, 1902) is immaterial.

That it came to his knowledge stands out as a prominent fact. The witness Frigola, who wrote the compromise, then the letter or notice of same to counsel for plaintiffs and who served same on counsel, testifies to this fact and is uncontradicted. Counsel himself does not deny receiving this notice which is corroborated by counsel's attempt, at the offer of the compromise-agreement in evidence, to exclude it so far as attorneys fees are concerned. Although aware of the existence of this compromise, the record fails to show any motion or adequate proceeding tending to set aside as having been the result of collusion or undue influence. True the Supreme Court condemns the practice of compromise agreements made, as in this case, without consulting the attorneys of record and, often, to their detriment, but that Court has invariably failed to set aside such compromises terminating a law suit where the elements of collusion or undue influence were wanting; where a judgment had not been obtained on which rested the attorneys lien and privilege; or where funds collected under a judgment were in the hands of the attorney over which he could exercise his right to payment of services.

The following authorities are referred to: 112 La., Smith vs. Vicksburg, S. & P. Ry. Co., 36 So. R. No. 17. p. 826, and authorities there cited. 35 A. 337, 24 A. 571.

If, as in this case, counsel for plaintiffs is entitled to remuneration for past and actual services, his recourse was against those who had employed him, not against plaintiff's debtor whose debt had been settled by compromise.

In the opinion of this Court the judgment appealed from is erroneous; it should be reversed. It is therefore ordered and decreed that said judgment be avoided and reversed. And it is now further ordered that plaintiff's suit and demand for damages be and it is rejected at their costs in both courts.

December 12th, 1904.

Writ refused by Supreme Court, February 27, 1905.